Reese, J.
delivered the opinion of the court.
At the June term of this court, in the year 1838, a final decree on appeal from the Chancery court at Kingston was pronounced in the case of Jordan vs. Black, in favor of the complainant, and the defendant, Black, was therein perpetually enjoined from doing certain acts specified. At the July term of this court, 1839, on the ground of affidavits then filed, alledging the wilful disobedience of the decree, and the violation of the injunction referred to, on the part of the said Black, the defendant in said suit, and also on the part of one Underwood and another, process of attachment was awarded against said Black, Underwood and another; Underwood has been arrested thereon, has given bond for his appearance at the present term of this court, and he has appeared. Interrogatories have not been filed, as would, perhaps have been the proper, at all events, the more regular course, touching the alleged contempt. But he has filed, on oath, an answer in relation to his conduct and motives' in the. premises, which his counsel deeming full and satisfactory, have thereon moved the court that he be discharged. This is opposed by the other side, and in resistance thereof they insist that they are entitled by counter affidavits or opposing testimony to show that the explanation given in said answer, and the grounds of excuse or exculpation there set forth, are not true.; and whether they be .thus entitled, or whether the defendant has a right to claim his discharge by force of the facts above stated in his answer, and without enquiring into their verity, is the preliminary question which we are called upon to decide. Fortunately for our community and much to their credit, the causes which lead *49 to discussions on the subject of contempts have hitherto been of rare occurrence, and the question referred to has not been settled in the practice of our courts. But upon referring to the authorities, it appears to be clear of all difficulty. . Two propositions are maintained by these authorities; first, that in cases at common law, the defendant will be discharged, if, by his answer to interrogatories filed he make such a statement as will free him from the imputed contempt, and that opposing testimony will not be heard; secondly, that in cases in Chancery, the truth of the defendants statement in reply to interrogatories filed, may be controverted on the other side, and the whole mátter be enquired into and ascertained by the court. 4th John. Rep. 332: Dane’s Abridgment, ch. 220, art. 4: 4 Bl. Com. 288: 1 Harrison Chancery, 202: Douglas, 516. The power to punish summarily by process of attachment, for contempts has been coeval with the existence of courts. Plasty thinkers, proceeding on false notions of liberty, have sometimes maintained, that this power is but little in harmony with the liberal institutions of England g.nd America. But on the contrary, it is obvious that wherever the laws govern and not the bayonets of the executive power, the courts must be armed with this summary authority in order to attain the ends of their institution. To courts of chancery it is indispensable. Their decrees are sometimes affirmative, and require an act to be done, as that one party shall convey by deed, shall surrender up an instrument to be cancelled; or sometimes negative, and restraining, as that a party shall refrain from doing a specified act. Without the power to enforce these decrees by punishing disobedience and violation of them, a court of chancery would be worse than useless, and for this reason, perhaps, the practice on the' point we are considering, differs from that of a court of common law. For if the answer of a defendant in questions of contempt were conclusive, a decree might lose all its vitality and not be enforced at all. The temptation, in many cases, to defeat the efficacy of a decree by sturdy denial of imputed contempt, might be too strong for the virtue of ■a party. - The rule, therefore, is regarded as well settled in England and in this country, that in Chancery testimony will be heard to contradict as well as to support the truth of a statement made by one against whom proceedings for contempt had been instituted.
But it has been suggested that the 22nd and 23d sections of the *50 act of 1801, cb. 6, have changed the practice referred to. We are satisfied that such is neither the purpose nor the effect of any provision contained in that statute; but that the settled course of proceeding in the point we have been considering, remains unchanged by the act of 1801, ch. 6. Such affidavits as may be offered to contradict the answer of defendant Underwood, .filed in the present case, will therefore be received as evidence.